IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 17-cv-00663

LABORATORY CORPORATION
OF AMERICA HOLDINGS,

    **Plaintiff,**

    v.

AIG SPECIALTY INSURANCE
COMPANY

and

LIBERTY MUTUAL INSURANCE
COMPANY,

    **Defendants.**

## COMPLAINT

Plaintiff Laboratory Corporation of America Holdings ("LabCorp"), for its Complaint against Defendants AIG Specialty Insurance Company ("AIG") and Liberty Mutual Insurance Company ("Liberty") states as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1. This is an insurance coverage dispute between LabCorp and its primary and excess insurance carriers, AIG and Liberty, regarding coverage for LabCorp's defense and settlement of a class action lawsuit, *Legg v. Laboratory Corporation of America Holdings*, 0:14-cv-61543-RLR (S.D. Fl.) (the "FACTA lawsuit").

2. LabCorp seeks compensatory damages against AIG for breaching its contractual duty to indemnify LabCorp for the defense and settlement of the FACTA lawsuit pursuant to the primary insurance policy AIG sold to LabCorp.

3. LabCorp seeks compensatory damages against Liberty for breaching its contractual duty to indemnify LabCorp for the defense and settlement of the FACTA lawsuit upon exhaustion of AIG's primary policy's limits of liability pursuant to the excess insurance policy Liberty sold to LabCorp.

## PARTIES

4. Plaintiff LabCorp is a Delaware corporation with its principal place of business in Burlington, North Carolina.

5. Defendant AIG is an Illinois corporation with its principal place of business in New York, New York.

6. Defendant Liberty is a Massachusetts stock insurance company with its principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiff LabCorp and Defendants AIG and Liberty.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this district.

2

## FACTS

### The FACTA Lawsuit

9. The FACTA lawsuit was a putative nationwide class action filed against LabCorp on July 6, 2014 in the U.S. District Court for the Southern District of Florida. The plaintiff sought statutory damages for LabCorp's alleged violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended.

10. FACTA was enacted in 2003 with the intended purpose of helping combat identity theft and fraud. Among FACTA's provisions are the so-called credit card receipt truncation requirements, which, generally speaking, require merchants accepting credit and debit cards to redact the last five digits of the consumer's card number and the expiration date on receipts provided to the consumer at the point of sale. 15 U.S.C. § 1681c(g)(1). A "willful" violation of FACTA can lead to statutory damages "of not less than $100 and not more than $1,000" per violation, as well as punitive damages, costs and attorneys' fees. *See* 15 U.S.C. § 1681n(a).

11. In the FACTA lawsuit, the plaintiff alleged that he underwent and paid for laboratory tests at a LabCorp location in Hollywood, Florida in 2014, and that LabCorp provided him with an electronically printed receipt for that single transaction which redacted his credit card number but did not redact his credit card expiration date. The plaintiff asserted that LabCorp's omission constituted a willful violation of FACTA, based on LabCorp's alleged knowledge of FACTA's requirements and its failure to

3

comply with those requirements at its more than 1,500 patient service centers around the United States.  *See* FACTA lawsuit Am. Compl., attached hereto as Exhibit A.

12. The plaintiff sought statutory damages on behalf of himself and on behalf of a putative nationwide class, consisting of:

> (i) All persons in the United States (ii) who, when making payment to LabCorp, (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed the expiration date of said credit or debit card (vi) within the five (5) years prior to the filing of the complaint.

*See id.* ¶ 49.

13. LabCorp retained counsel to defend the FACTA lawsuit and the parties engaged in extensive litigation over the following year.

14. On July 25, 2015, the parties entered into an agreement to settle the FACTA lawsuit for $11,000,000, an amount that was reasonable under the circumstances given the total exposure faced by LabCorp and the likelihood of liability.

15. The plaintiff moved for preliminary approval of the class action settlement on October 26, 2015, and the settlement was finally approved on February 18, 2016.

16. LabCorp subsequently paid the $11,000,000 settlement amount.  Through the course of the litigation, LabCorp also incurred $2,433,915.64 in reasonable and necessary defense costs.

## The Policies

17. AIG sold LabCorp a primary "Specialty Risk Protector Policy" covering the policy period November 1, 2013 through November 1, 2014 (the "AIG Policy," attached hereto as Exhibit B).

18. Under the Security and Privacy Liability ("S&P") Coverage Section of the AIG Policy, AIG promised to pay LabCorp's "Loss," defined to include defense costs, judgments and settlements, resulting from any lawsuit filed during the policy period alleging a "Privacy Event." *See* Exhibit B, S&P Coverage Section ¶ 1.

19. AIG's obligation to pay for such Loss is subject to a $500,000 retention and a $10,000,000 limit of liability per claim. *See* Exhibit B, Declarations, Item 6.

20. LabCorp paid all required insurance premiums with respect to the AIG Policy and has satisfied all terms and conditions thereof.

21. To the extent LabCorp has not complied with any term or condition of the AIG Policy, such non-compliance was not material, and AIG has suffered no prejudice as a result.

22. Liberty sold LabCorp an excess "Management Liability and Professional Liability Excess Follow Form Policy" covering the same policy period, *i.e.* November 1, 2013 through November 1, 2014 (the "Liberty Policy," attached hereto as Exhibit C).

23. The Liberty Policy incorporates the "insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions" contained in the primary AIG Policy, and covers LabCorp's losses in excess of the AIG Policy's $10 million

limits, up to its own $10 million limit of liability.  *See* Exhibit C, Policy Terms ¶ 1 and Declarations.

24.     LabCorp paid all required insurance premiums with respect to the Liberty Policy and has satisfied all terms and conditions thereof.

25.     To the extent LabCorp has not complied with any term or condition of the Liberty Policy, such non-compliance was not material, and Liberty has suffered no prejudice.

26.     LabCorp provided timely notice to AIG and Liberty of the FACTA lawsuit.

27.     AIG and Liberty have, in violation of the AIG Policy and Liberty Policy, denied any coverage obligation for the FACTA lawsuit under their respective policies.

## **The Mediation and the Defendants' Preemptive Lawsuit**

28.     The AIG Policy and the Liberty Policy (through its incorporation of the AIG Policy's terms and conditions) contain a dispute resolution provision which requires LabCorp and the insurers to mediate, under the AAA Mediation Rules, any dispute arising out of the Policies before any party may sue.  *See* Exhibit B, General Terms & Conditions, ¶ 15.

29.     The dispute resolution provision provides that, after the parties engage in a mediation which does not produce a resolution of the dispute, any party is entitled to commence a judicial proceeding, but "no such judicial or arbitration proceeding shall be commenced until at least 90 days after the date the non- binding mediation shall be deemed concluded or terminated." *Id*.

6

30. The AAA Mediation Rules, which govern any mediation under the dispute resolution provision, expressly provide for when a mediation is deemed "terminated" under those rules:

> **M-12. Termination of Mediation**
>
> The mediation shall be terminated:
>
> (i) By the execution of a settlement agreement by the parties; or
>
> (ii) By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or
>
> (iii) By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or
>
> (iv) When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

*See* AAA Mediation Rules (amended and effective Oct. 1, 2013), available online at http://www.adr.org/Commercial.

31. Following AIG's and Liberty's denial of coverage for the FACTA lawsuit, the three parties agreed to mediate LabCorp's claim for coverage pursuant to the Policies' dispute resolution provision.

32. On March 30, 2017, counsel for the parties attended a mediation conference at the JAMS facility in New York City.

33. The parties did not resolve their dispute at the March 30, 2017 mediation conference.

7

34. The mediator did not make any written or verbal declaration to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute.

35. The parties did not make any written or verbal declaration to the effect that the mediation proceedings were terminated.

36. To the contrary, the parties continued to have discussions regarding their ongoing mediation of the dispute after March 30, 2017.

37. Upon information and belief, no party had any further communication with the mediator regarding settlement or additional mediation sessions after the March 30, 2017 mediation conference.

38. Accordingly, under the AAA Mediation Rules, the parties' mediation "terminated" 21 days after the March 30, 2017 mediation conference, *i.e.*, on April 20, 2017, and the dispute resolution provision's 90-day post-mediation waiting period started on April 20, 2017, and ended on July 19, 2017.

39. Notwithstanding the Policies' mandatory waiting period, AIG and Liberty Mutual filed a declaratory judgment action against LabCorp in the U.S. District Court for the Southern District of Florida on June 28, 2017, several weeks before the waiting period ended. *See AIG Specialty Insurance Co. v. Laboratory Corporation Holdings of America*, Civil Case No. 17-cv-61267 (S.D.Fl.) (the "Florida Action").

40. In the Florida Action, AIG and Liberty seek a declaration that they have no coverage obligations under the AIG Policy or the Liberty Policy with respect to the FACTA lawsuit.

41. LabCorp has filed a motion to dismiss, stay or transfer the Florida Action.

## **COUNT I – BREACH OF CONTRACT - AIG**

42. LabCorp repeats each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. The FACTA lawsuit was filed within the policy period of the AIG Policy and alleged that LabCorp was liable for a "Privacy Event" as that term is defined by the AIG Policy.

44. As a result of the FACTA lawsuit, LabCorp sustained "Loss," as that term is defined in the AIG Policy, in the form of LabCorp's $11,000,000 settlement payment and the $2,433,915.64 in reasonable and necessary defense costs that LabCorp incurred in defending the FACTA lawsuit.

45. AIG is obligated under the AIG Policy to indemnify LabCorp for the cost of defending and settling the FACTA lawsuit in excess of the AIG Policy's $500,000 retention, up to the AIG Policy's $10 million policy limits.

46. AIG has breached the AIG Policy by refusing to honor its obligation to indemnify LabCorp for the FACTA lawsuit.

47. As a direct and proximate result of AIG's breach of its Policy, LabCorp has been deprived of the benefit of insurance coverage for which it paid significant premiums. AIG has not indemnified LabCorp for any of its defense or settlement costs incurred in defending the FACTA lawsuit, which asserted claims that fall within the coverage of the AIG Policy.

48. As a direct and proximate result of AIG's breach of its contractual obligations, LabCorp has suffered, and will continue to suffer, monetary damages.

## COUNT II – BREACH OF CONTRACT - LIBERTY

49. LabCorp repeats each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50. Because AIG has a duty under the AIG Policy to indemnify LabCorp for the "Loss" that it sustained as a result of the FACTA lawsuit, Liberty is obligated, under the Liberty Policy, to indemnify LabCorp for such "Loss" in excess of the AIG Policy's $10 million policy limits.

51. LabCorp has sustained "Loss" as a result of the FACTA lawsuit that exceeds the AIG Policy's $10 million policy limits.

52. Liberty is obligated under the Liberty Policy to indemnify LabCorp for the cost of defending and settling the FACTA lawsuit in excess of the AIG Policy's $10 million policy limits, up to the Liberty Policy's $10 million policy limits.

53. Liberty has breached the Liberty Policy by refusing to honor its obligations to indemnify LabCorp for the FACTA lawsuit.

54. As a direct and proximate result of Liberty's breach of its Policy, LabCorp has been deprived of the benefit of insurance coverage for which it paid significant premiums. Liberty has not indemnified LabCorp for any of its defense or settlement costs incurred in defending the FACTA lawsuit, which asserted claims that fall within the coverage of the Liberty Policy.

55. As a direct and proximate result of Liberty's breach of its contractual obligations, LabCorp has suffered, and will continue to suffer, monetary damages.

### COUNT III – BREACH OF CONTRACT – BOTH DEFENDANTS

56. LabCorp repeats each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57. AIG and Liberty breached the Policies' dispute resolution provision by filing the preemptive Florida Action before the expiration of the mandatory 90-day post-mediation waiting period.

58. As a direct and proximate result of AIG's and Liberty's breach of their contractual obligations, LabCorp has suffered, and will continue to suffer, monetary damages, including *inter alia*, the costs associated with filing its motion to dismiss the Florida Action.

**WHEREFORE**, LabCorp prays that the Court:

(a) Award compensatory damages in an amount that proof will establish for AIG's breaches of the AIG Policy;

(b) Award compensatory damages in an amount that proof will establish for Liberty's breaches of the Liberty Policy;

(c) Award pre-judgment and post-judgment interest and such other relief that this Court deems appropriate.

**LABCORP DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: July 19, 2017

Respectfully submitted,

/s/ R. Steven DeGeorge
R. Steven DeGeorge
N.C. Bar No. 20723
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-8380
sdegeorge@robinsonbradshaw.com

KELLEY DRYE & WARREN LLP
Robert I. Steiner
*Pro hac vice* forthcoming
101 Park Avenue
New York, NY 10178
(212) 808-7965
rsteiner@kelleydrye.com

Cameron R. Argetsinger
*Pro hac vice* forthcoming
3050 K Street, N.W.
Suite 400
Washington, D.C. 20007
(202) 342-8400
cargetsinger@kelleydrye.com

Attorneys for Laboratory Corporation
of America Holdings